## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STUDIO GIRAFFE LLC and THOMAS SILVERMAN, | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-05322-RA |
| JAVLON NIZOMOV, | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

### I.    INTRODUCTION

Plaintiffs, Studio Giraffe LLC ("Studio Giraffe") and Thomas Silverman ("Silverman") (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the motion (Dkt. No. 12) of Defendant Javlon Nizomov ("Nizomov") to dismiss the Complaint (Dkt. No. 1) pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

Defendant, having exploited New York's marketplace for years by providing software development services here, reaping the benefits of this jurisdiction's laws, and then turning those same contacts into instruments of fraud and coercion, now asks the Court to hold that it lacks jurisdiction over him. That is not the law. As the Complaint makes clear, Defendant's conduct falls squarely within C.P.L.R. § 302 and the requirements of due process: he sold his services into New York, accepted substantial payments from New York, and deliberately directed wrongful acts at Plaintiffs in this District.

Defendant's Rule 12(b)(6) challenge is equally unavailing. Plaintiffs' Complaint easily satisfies the pleading standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The allegations describe in detail Defendant's misconduct and the resulting harm, giving him full and fair notice of the claims asserted. His attempt to brand the Complaint a "shotgun pleading" is meritless; that doctrine is not recognized in this Circuit, and courts in New York apply only the liberal pleading rules of Rule 8.

Finally, even if the Court were to find any deficiency in the pleadings—a conclusion Plaintiffs respectfully submit is unwarranted—the appropriate remedy would be leave to amend, not dismissal.

## II.    ARGUMENT

### A.    This Court Has Personal Jurisdiction Over Defendant

 To prevail on a motion under Fed. R. Civ. P. 12(b)(2) motion, Plaintiffs need only make a prima facie showing that personal jurisdiction exists. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). At this stage, the Court must accept all jurisdictional allegations as true, construe them in the light most favorable to Plaintiffs, and resolve all doubts in Plaintiffs' favor. Id. The jurisdictional inquiry proceeds in two steps with the Court first considering New York's long-arm statute, N.Y. C.P.L.R. § 302, followed by evaluating whether the exercise of jurisdiction comports with constitutional due process. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010) (articulating two-step process for determining personal jurisdiction over non-domiciliary). Each subsection independently supports jurisdiction, as detailed below.

Jurisdiction likewise fully comports with due process as Defendant purposefully availed himself of the privilege of conducting business with New York Plaintiffs, and the exercise of jurisdiction satisfies the Supreme Court's "minimum contacts" standard. Far from random or

fortuitous, Defendant's conduct was deliberate, sustained, and intentionally aimed at New York, the home of Plaintiffs. Jurisdiction is therefore proper.

      1.     <u>Plaintiffs' Well-Pled Complaint Describes a Pattern of Conduct Purposefully Directed at This Forum</u>

The Complaint tells a story of sustained, intentional business dealings with New York, along with intentional torts committed both in and purposefully directed into this forum. Because Defendant's motion turns on the specifics of the Complaint, it bears summarizing the allegations that directly establish personal jurisdiction:

- In or around 2020, Silverman, a New York resident, engaged Defendant to perform programming services for Speed Draw! (Compl. ¶ 15).

- Defendant entered into a commission-based arrangement with Silverman, later extended through Studio Giraffe LLC (Compl. ¶¶ 7–8, 12, 15–17).

- Defendant's compensation included up to 45% of Roblox *revenues* generated by the venture (Compl. ¶ 17).

- Defendant received substantial payments from Plaintiffs in New York between 2020 and early 2023, directly tied to the game's commercial success (Compl. ¶ 17).

- Those payments continued into 2025, even after Defendant ceased performing services in early 2023, because the arrangement provided for ongoing payment so long as the software was in use (Compl. ¶¶ 17–18).

- Defendant was terminated for cause in early 2023 (Compl. ¶ 18). After termination, Defendant sabotaged portions of the Speed Draw! codebase, impairing Plaintiffs' operations in New York (Compl. ¶ 59).

- Defendant threatened Silverman in New York that he would "never make another penny" from the game unless further sums were paid (Compl. ¶¶ 22–23, 25).

- Defendant carried out or threatened fraudulent trademark and intellectual property filings to seize ownership of Speed Draw! and coerce Plaintiffs (Compl. ¶¶ 37–45).

- Defendant promised to file fraudulent DMCA takedown notices to cripple Plaintiffs' ability to monetize the game from New York (Compl. ¶¶ 21–25, 53–55).

- Defendant's threats and fraudulent filings were deliberately directed at Plaintiffs in New York, where Plaintiffs reside and operate (Compl. ¶¶ 7–8, 12, 53–55).

- Plaintiffs suffered economic injury in New York from Defendant's sabotage, threats, and fraudulent filings (Compl. ¶¶ 53–55).

As discussed below in the context of C.P.L.R. § 302 and constitutional due process, the allegations in the Complaint far exceed the threshold for establishing personal jurisdiction over Defendant.

        2.      <u>Plaintiffs Have Sufficiently Alleged Jurisdiction Under N.Y. C.P.L.R. § 302</u>

N.Y. C.P.L.R. § 302 provides three distinct scenarios where this Court may exercise personal jurisdiction over a non-domiciliary defendant such as Defendant:

§ 302. Personal jurisdiction by acts of non-domiciliaries.

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

    1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

    2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

    3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

        (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

        (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; [. . . .]

To satisfy this element of jurisdiction, Plaintiff need only make allegations that meet any one of the three prongs listed above. Each is discussed in turn below.

(a)    Defendant's Business Dealings in New York Establish Jurisdiction
Under § 302(a)(1)

Defendant has engaged in purposeful, volitional business transactions with New York Plaintiffs that are directly connected to the claims at issue. The statute requires only that a defendant "transact[] any business within the state" and that the cause of action "arises from" those transactions. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (repeated use of New York correspondent accounts to execute wire transfers constituted transacting business in New York and that plaintiffs' claims had an "articulable nexus" to those contacts). *See also Chloé*, 616 F.3d at 170 (holding that a single purposeful transaction with nexus to dispute suffices); *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 344–45 (S.D.N.Y. 2015) (holding fraudulent mailings into New York sufficient under § 302(a)(1)).

Defendant knowingly entered into an agreement with Silverman, a New York resident, to act as a contractor providing software development services to Silverman's Speed Draw! concept (Compl. ¶¶ 7–8, 15–17). Defendant continued in that role until his termination for cause in early 2023 (Compl., ¶18), with payments continuing into 2025 under the terms of the arrangement, which provided that payment for the software would continue so long as it was in use by Plaintiffs (Compl., ¶17). Defendant communicated extensively with Silverman in New York to execute the agreement (¶¶ 16, 19), and he accepted reimbursements for expenses through the New York-based enterprise (¶¶ 18, 20).

Courts have consistently held that this sort of deliberate business contact with New York— even a single purposeful act—is sufficient to establish jurisdiction. *See Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 23 (2d Cir. 1988) (jurisdiction proper where defendants deliberately solicited and directed fraudulent acts at New York residents); *Chloé*, 616 F.3d at 170–71 (single sale and shipment of counterfeit handbag into New York sufficient to establish jurisdiction); *Eades*

*v. Kennedy, PC Law Offices*, 799 F.3d 161, 169–70 (2d Cir. 2015) (debt collector's single letter and phone call into New York satisfied § 302(a)(1)); *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 154–55 (E.D.N.Y. 2014) (holding out-of-state officers subject to jurisdiction based on targeted New York communications).

Defendant cites *Birdie Girl Golf, LLC v. Many Hats Enters., LLC*, 2025 U.S. Dist. LEXIS 159935, *7 (S.D.N.Y. Aug. 18, 2025) in support of its argument that entering into a contractual agreement with a New York resident and providing services to a New York company is not the sort of conduct envisioned by § 302(a)(1). *Birdie Girl* involved only conclusory allegations tied to a passive website with no demonstrated New York contacts. Plaintiffs here have pled far more: a multi-year contractual relationship with a New York company, a compensation structure tied to New York revenues, and deliberate wrongful acts aimed at New York residents (Compl. ¶¶ 7–8, 15–25, 37–45).

*Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 321-322 (2016), also cited by Defendant, fares no better. That case involved tenuous banking transactions with only incidental ties to New York. By contrast, the Second Circuit in *Licci*—decided after *Al Rushaid*—made clear that repeated and intentional use of New York contacts tied directly to the alleged misconduct suffices to establish jurisdiction. *Licci*, 732 F.3d at 169 (holding that claims had an "articulable nexus" to a defendant's repeated, deliberate use of New York correspondent accounts). Here, the nexus is far stronger: Defendant entered into a multi-year commission-based arrangement with a New York resident and later a New York company, provided programming services at Silverman's direction from New York, and derived substantial revenue from those New York-centered operations (Compl. ¶¶7–8, 15–17). Those sustained, revenue-generating contacts with New York form the very basis of Plaintiffs' claims, and they readily satisfy § 302(a)(1).

Plaintiffs' Complaint pleads purposeful and volitional conduct in granular detail: Defendant contracted with New York entities, derived substantial revenue from their operations, and then turned those same contacts into instruments of fraud and coercion aimed at this forum. Those are exactly the kind of deliberate acts § 302(a)(1) recognizes as sufficient. Defendant's attempt to analogize to a passive website or incidental financial transaction mischaracterizes both the pleadings and the law.

        (b)     Defendant's Tortious Conduct in New York Establishes Jurisdiction Under § 302(a)(2)

Defendant is also subject to jurisdiction under § 302(a)(2). That provision reaches a non-domiciliary who "commits a tortious act within the state." Courts interpret it to apply where, as here, an out-of-state actor purposefully directs tortious conduct into New York, even if the act originates elsewhere. *Chloé*, 616 F.3d at 170–71 (holding that a single sale and shipment of a counterfeit handbag into New York established jurisdiction); *Elsevier*, 77 F. Supp. 3d at 344–45 (holding that fraudulent mailings into New York sufficed under § 302(a)(2)); *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 169–70 (2d Cir. 2015) (holding that one debt-collection letter and phone call into New York were enough).

As detailed in the Complaint, Defendant's sabotage, threats, and fraudulent filings were deliberately aimed at Plaintiffs in New York (see supra § 302(a)(1), Compl. ¶¶ 21–25, 37–45, 53–55, 59). These allegations fall squarely within § 302(a)(2).

        (c)     Defendant's Out-of-State Acts Causing New York Injury Establish Jurisdiction Under § 302(a)(3)

Section 302(a)(3) provides jurisdiction over a defendant who commits a tortious act outside the state causing injury within New York if additional statutory conditions are met. New York courts routinely exercise jurisdiction where out-of-state conduct foreseeably inflicts economic

harm on New York businesses. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 305–07 (2011) (holding that uploading copyrighted works without authorization caused injury in New York, where the rights-holder was domiciled); *Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (holding that injury from copyright infringement was sustained in New York, where the plaintiff was based).

Here, even if Defendant's wrongful acts originated outside the state, the Complaint alleges that their effects were felt directly in New York: threats and fraudulent filings were aimed at Plaintiffs, domiciled here, and caused concrete economic injury here (see supra § 302(a)(1), Compl. ¶¶ 7–8, 12, 21–25, 37–45, 53–55). Defendant both expected and intended that result, satisfying § 302(a)(3)(ii).

3.     The Complaint Establishes Minimum Contacts Consistent with Due Process

Defendant has constitutionally sufficient minimum contacts with New York because he created and maintained a continuing, revenue-tied business relationship with New York Plaintiffs and then directed intentional misconduct at them in this forum.

A defendant who "purposefully avails" himself of a forum by reaching out to form sustained obligations with its residents can reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Complaint alleges that Defendant contracted with Silverman (a New York resident) and Studio Giraffe (a New York LLC), tied his compensation to New York revenues, and carried out the arrangement through regular communications with Plaintiffs in this District (Compl. ¶¶ 7–8, 15–19). Those facts are more than sufficient to establish purposeful availment.

The claims also relate directly to these contacts. The Supreme Court has confirmed that specific jurisdiction exists where a claim "arises out of or relates to" a defendant's forum contacts.

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359–66 (2021). Here, the alleged misconduct—fraudulent IP filings, threats of litigation, and DMCA takedowns—was the direct outgrowth of the contract software development arrangement with Plaintiffs in New York (Compl. ¶¶ 21–25, 37–45).

Courts in this Circuit regularly find minimum contacts where a defendant enters a continuing commercial arrangement with a New York counterparty and performs through sustained communications into the forum. *See e.g.*, *Retail Software Servs.*, 854 F.2d at 23; *Eades*, 799 F.3d at 169–70. Defendant's multi-year contract, tied to New York revenues and carried out with New York Plaintiffs, squarely fits that precedent.

Intentional torts aimed at a forum supply an independent basis for minimum contacts. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984) ( holding that Florida publisher's libelous article was expressly aimed at California, where harm was felt); *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014) (holding no jurisdiction where officer's conduct occurred in Georgia and mere injury in Nevada was insufficient). Plaintiffs allege threats of litigation sent into New York, fraudulent IP filings intended to coerce New York Plaintiffs, and promised DMCA takedowns designed to cripple their New York operations (Compl. ¶¶ 21–25, 37–45, 53–55). Those allegations show express aiming at this forum, not mere foreseeability.

Defendant's conduct here—anchored in a sustained contract with New York Plaintiffs and wrongful acts directed at them in this forum—falls squarely within this section

**B.     Plaintiffs' Complaint States a Claim for Relief Under Fed. R. Civ. P. 12(b)(6)**

A complaint fulfills Fed. R. Civ. P. 12(b)(6) so long as it provides a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has made clear that the standard remains modest: factual allegations, taken as true, need only state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570;

*Ashcroft v. Iqbal*, 556 U.S. at 678–79. The Rules do not require evidentiary detail, technical precision, or defendant-by-defendant parsing, but only enough facts to give fair notice and support a plausible inference of liability. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (reversing dismissal for failure to cite statute); *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (noting that Fed. R. Civ. P. 8 is "extremely permissive").

Against that backdrop, Defendant's effort to import a Florida "shotgun pleading" doctrine has no basis in this District or Circuit. Courts here evaluate complaints under Rule 8 and *Twombly/Iqbal*—nothing more. Plaintiffs' pleading easily satisfies those standards, and the "shotgun" label is irrelevant.

      1.    <u>Plaintiffs' Complaint Satisfies Fed. R. Civ. P. 8 and Easily Clears the Governing Twombly/Iqbal Standard</u>

Plaintiffs' Complaint meets and exceeds Rule 8's requirements by setting forth a coherent, fact-specific narrative of Defendant's wrongful conduct. Rule 8 requires only a short and plain statement; it does not demand evidentiary support or heightened pleading. Fed. R. Civ. P. 8(a)(2). The Complaint lays out the relationship with Nizomov, his retention and termination, his revenue-sharing compensation, his retaliatory IP filings, and his threats aimed at Plaintiffs in New York (Compl. ¶¶ 15–25, 37–45). These factual allegations are far more robust than the bare assertions rejected in *Twombly*.

The plausibility standard is comfortably satisfied here. In *Iqbal*, the Court reiterated that factual allegations, taken as true, must allow the court to draw the reasonable inference of liability. *Iqbal*, 556 U.S. at 678–79. Plaintiffs allege specific wrongful acts—filing false trademark and copyright applications, threatening litigation, and interfering with Plaintiffs' Roblox-based business—that plausibly state multiple causes of action. *See Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (*Twombly/Iqbal* require factual content sufficient to render the claims

plausible, not detailed proof). *See also* Johnson, 574 U.S. at 11 (reversing dismissal and noting that federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

2.    Defendant's "Shotgun Pleading" Challenge Is Baseless in This Circuit

Defendant's attempt to dismiss the Complaint as a "shotgun pleading" fails because such doctrine is not recognized in this Circuit. The Second Circuit has rejected heightened, non-textual pleading standards under Rule 8. *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (explaining that Rule 8 is "extremely permissive" and does not permit dismissal for lack of precise form or detail). Unlike in the Eleventh Circuit, where "shotgun pleading" has developed as shorthand for vague complaints, the only relevant question here is whether the pleading provides fair notice and plausibly states a claim. *Id.*

Defendant's invocation of "shotgun pleading" is therefore nothing more than an effort to import an Eleventh Circuit doctrine that does not apply here. In this District, Rule 8 and Twombly/Iqbal govern, and Plaintiffs' detailed factual allegations satisfy both. The Court should reject Defendant's "shotgun" label and evaluate the Complaint under the actual pleading standard it easily meets.

3.    Defendant's New York Partnership Law Argument Is Untimely

Defendant's fallback argument—that the Complaint fails under New York Partnership Law §§ 10–11 because the parties' arrangement amounted to a partnership—is both procedurally improper and substantively wrong.

At the highest level, the argument is internally inconsistent. Defendant first contends that Plaintiffs' Complaint is too vague to fairly put Defendant on notice of Plaintiffs' claims (the "50,000-foot" attack), and then immediately shifts to parsing the New York Partnership Law at the micro-level. That inconsistency underscores the weakness of Defendant's position. If the

Complaint truly lacked specificity, Defendant could not simultaneously argue that it affirmatively establishes a statutory partnership.

Besides oversimplifying and cherry-picking the law governing partnership formation in New York, even taken on its own terms, Defendant's argument collapses. Plaintiffs' allegations do not suggest that Defendant ever shared in the profits of Plaintiffs' Roblox enterprise. The Complaint alleges a revenue-sharing model, not a profit-and-loss split. Defendant was compensated through Roblox's standard developer payout structure, in which contractors are paid a percentage of revenues regardless of whether the project is profitable. That structure reflects compensation, not equity ownership. *See Compl.* ¶ 30 (explaining that the revenue-sharing arrangement reflected contractor compensation, not a distribution of profits); Compl. ¶ 57 (alleging commission-based compensation including a share of Roblox-generated revenues).

The Complaint also makes clear that the hallmarks of partnership were absent. Defendant contributed no capital (Compl. ¶¶ 15–16), bore no risk of loss (¶¶ 17–18), and exercised no joint control over the enterprise (¶ 19). Plaintiffs alone funded translations, artwork, 3D modeling, and additional programming, while Defendant was reimbursed only for his occasional out-of-pocket costs (¶ 20). Courts consistently hold that such arrangements do not create partnerships. *Prince v. O'Brien*, 234 A.D.2d 12 (1st Dep't 1996) (finding no partnership where plaintiff made no capital contribution, had no joint control, and was paid like an employee); *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 679 (2d Cir. 1998) (relationship defined by conduct over time, not labels).

More fundamentally, Rule 12(b)(6) is not a vehicle for resolving contested factual issues, and Defendant's attempt to drag the Court into a premature merits inquiry is a red herring. *See*

*Prince*, 234 A.D.2d at 12. Defendant's § 10–11 argument is meritless, premature, and irrelevant to the Rule 12(b)(6) inquiry. It provides no basis to dismiss the Complaint.

      **C.**    **Leave to Amend Is the Proper Remedy**

Even if the Court were to find any deficiency in the pleadings—a conclusion Plaintiffs respectfully submit is unwarranted—the proper remedy would be leave to amend, not dismissal. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015) (reversing dismissal with prejudice and emphasizing that plaintiffs should ordinarily be granted leave to replead after the benefit of a court's reasoning).

**III.**    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss.

                                 Respectfully submitted,

Dated: September 12, 2025          **BOAG LAW, PLLC**
                                 *Co-Attorneys for Plaintiffs Studio Giraffe LLC and Thomas Silverman*

                                 By: */s/ David A. Boag*
                                 David A. Boag
                                 447 Broadway, Suite 2-270
                                 New York, NY 10013
                                 dab@boagip.com

                                 **ROSS KATZ & PACHNANDA PLLC**
                                 *Co-Attorneys for Plaintiffs Studio Giraffe LLC and Thomas Silverman*

                                 By: */s/ Alex K. Ross*
                                 Alex K. Ross
                                 845 Third Avenue, Sixth Floor
                                 New York, NY 10022
                                 Aross@RKPlawgroup.com
                                 (917) 997-7677