

7999 N. Federal Highway, Suite 202
Boca Raton, FL 33487
(561) 953-9300
(800) 853-9692
Fax: (561) 953-3455
www.Lomnitzerlaw.com

Kelly@Lomnitzerlaw.com
Direct: (561) 948-1950

February 25, 2026

**VIA EMAIL TO:**

The Honorable Sarah Netburn
Magistrate Judge
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

> **RE: CONFIDENTIAL MATERIAL FOR USE ONLY AT SETTLEMENT CONFERENCE FOR:** Studio Giraffe, LLC, et al. v. Javlon Nizomov, No. 25-cv-5322 (RA) (S.D.N.Y.)

Dear Judge Netburn:

We write to you today in accordance with your required procedures in advance of the Settlement Conference currently scheduled for March 4, 2026, beginning at 10am via telephone.[1] In addition to myself, Kelly Ann desRosiers, the defendant Javlon Nizomov will also be in attendance. We thank you in advance for taking the time to assist in potentially resolving this matter. Please note, Mr. Nizomov has not yet filed an answer, affirmative defenses or his counterclaims as there is a pending motion to dismiss based on personal jurisdiction.

**Background**

By way of background, our client, Mr. Javlon Nizomov ("Mr. Nizomov") is a software code and game developer. Mr. Nizomov and Mr. Silverman – the individual plaintiff and owner of the entity plaintiff – ("Mr. Silverman") originally met in approximately 2015 through online

---

[1] The Court has granted the Parties' request to appear via telephone conference based on the location of the Parties and defense counsel.

gaming. Some time in 2019, Mr. Silverman hired Mr. Nizomov to create a game known as "Obby World" and this situation the parties had a specific contractor arrangement including a one-time payment and revenue share.[2] Later in 2019, the Parties – together – began developing the idea and concept of "Speed Draw" ("Game").[3] At this time, the Parties began explicitly discussing a long-term partnership and investing in this new game **together**.[4] Mr. Nizomov would be the Chief Programmer of the Game and contribute all of the code and updates needed as well as receive the title of "Co-Founder" as evidenced by written communications from Mr. Silverman. During this time, again as evidenced by the written communications, the Parties worked together to provide ideas and feedback to design the game. Also, during this time, the Parties negotiated and renegotiated deals to memorialize the partnership. Initially, the Parties agreed, on or about March 24, 2020, to Mr. Nizomov receiving 40% of the Game's revenue as well as a $425.00 one time payment, annual Christmas bonuses, free promotion of any new games using Plaintiff's games as well as funding of Mr. Nizomov's future projects. In approximately December of 2020, Mr. Nizomov requested an increase in his percentage based on the significant amount of work he was providing and bringing to the partnership. After continued work and discussions, the Parties provided an email "contract" outlining their agreement and increasing Mr. Nizomov's payout to 45% of the revenue derived from the Game. The Parties continued on in their relationship, including Mr. Nizomov commissioning and paying various artists to create branding as well as developing the graphic logo utilized for the Game.

The Game was ultimately released to the public on January 5, 2022, and gained success. During this time, Mr. Nizomov continues to provide updates and bug fixes – typical of an online game as it grows. Mr. Nizomov was receiving his monthly payouts as a partner which equated approximately $5,000.00 - $10,000.00 a month. Beginning in the summer of 2022, Mr. Nizomov learned of numerous situations that raised concern – including the deliberate exclusion from a prospective toy deal with a large distributor. Any time Mr. Nizomov would ask or raise concerns, Mr. Silver would threaten or harass Mr. Nizomov – including in group chats with others. Ultimately, in April of 2023, Mr. Nizomov experienced some medical issues and needed additional a more prolong time away from programming and creating the Game. Rather than supporting his partner, Mr. Silverman ultimately removed all of Mr. Nizomov's access to servers and backend and ultimately changed Mr. Nizomov's game credit from co-creator to "Fan" and cut off all contact. Mr. Silverman continued to pay out the 45% revenue, however, upon initiating the Lawsuit – stopped.

There is no dispute that – at least until December 2022 – Mr. Nizomov significantly contributed and created the code for the Game. After that, it is Plaintiff's contention that additional coders were used, thus the code currently used in the Game is not affiliated with Mr. Nizomov's

---

[2] This is unrelated to the current dispute, however demonstrates the intention of the parties to enter into a partnership versus the prior contractor relationship.
[3] All communications between the Parties were through email or the online chat platform – Discord.
[4] At the time of entering into these initial oral agreements, Mr. Nizomov was only 17 years old.

creation. The issue here being, Mr. Nizomov owns a federal copyright in the code so any derivative work or building upon the protected code, is a direct violation of Mr. Nizomov's intellectual property.[5]

### Prior Settlement Attempts

Prior to this firm's involvement, Mr. Nizomov retained a transactional attorney, Thomas Wright, who engaged in efforts for pre-suit resolution. On or about February 20, 2025, Mr. Silverman made a proposal for settlement which would have provided a 35% payment of proceeds from the Game going forward to Mr. Nizomov. In addition to the payment, Mr. Silverman demanded a non-disparagement clause, a mutual release of all claims related to the Game, trademark and source code, Mr. Nizomov abandons any current trademark applications and while he his being paid this percentage – there would be a non-compete clause. Additionally, the title of "Former Contributor" "Former Contractor" "Chief Engineer Emeritus of Speed Draw" "Former Chief Engineer of Speed Draw" or "Former Contributor of Speed Draw" would be provided on the credits. After Mr. Nizomov rejected the proposal, the monthly payments stopped and this lawsuit ensued.

During this litigation, Mr. Silverman has presented a simple walk away resolution and that all right, title and interest in the Game and its code (past and present) shall remain with Plaintiff, complete waiver of any monetary damages for either side, mutual non-disparagement, 2-year non-compete, abandonment of all applications and registrations, and no future involvement in the Game. This was a significant departure from the pre-suit offer and did not sit well with Mr. Nizomov. In response, Mr. Nizomov offered to accept the 50% revenue payment he previously requested, or in the alternative a lump sum buyout. He is not agreeable to a non-compete as he is the creator of the code and the game and a non-compete would limit his ability to earn a living. This is the last settlement communication.

### Defendant's Settlement Value

Defendant values this case fairly high given the success of the Game which is utilizing or at a minimum derived from Mr. Nizomov's copyright protected code. At this time, we have requested documents demonstrating the current monthly income, but have not received such, however based on the previous revenue received by Mr. Nizomov, it's fair to assume the game is earning approximately $15,000.00 - $25,000.00 per month. This is not including any revenue earned from merchandise or outside sales. At a minimum, Mr. Nizomov will seek the 45% revenue payout that has been withheld since approximately March of 2025 through the present. Again, based on prior earnings, Mr. Nizomov estimates this to be $10,000.00 per month (approximately $110,000.00 at this time). Further, should this matter continue, Mr. Nizomov intends to file his

---

[5] There is also a pending trademark application for the "Speed Draw" word and graphic logo filed by Mr. Nizomov, who intentionally included Mr. Silverman based on their partnership.

countersuit, including the breach of oral agreement, as well as copyright infringement. Although there is a dispute as to whether the Plaintiff is currently utilizing Mr. Nizomov's copyrighted code (it is believed there are still significant portions of the code in use) at a minimum, any subsequent developers have created derivative works based on Mr. Nizomov's copyrighted code – thus he is entitled to damages for such infringement. This amount cannot be calculated without the requested discovery, however it is estimated to be at least $150,000.00 in either statutory (willful infringement) or disgorgement of profits earned by the Game.

### **Additional Information**

There is no written agreement between the Parties, specifically memorializing any type of "work-for-hire" or independent contractor relationship. While there is also no dispute that there is no express "partnership" or "joint venture" agreement, the significantly documented communications and actions on both Parties demonstrate a partnership. Specifically, the significant revenue share – not payment but expressly referred to as revenue share. The joint control over the development of the Game as well as the shared financial responsibilities – although Mr. Silverman may have contributed more that does not negate Mr. Nizomov's investments nor his sweat equity.

There is no dispute that the Parties now have a tense and strenuous relationship, and counsels have discussed as well that continuing any business relationship is likely not in the best interest of either party. The Parties also lack any trust amongst each other and have completely burned any relationship. In all honesty, had Mr. Silverman simply continued paying Mr. Nizomov the revenue share owed, there would likely be no dispute.

Ultimately, Mr. Nizomov wants his fair compensation that he was promised in exchange for the significant amount of work he created. Mr. Silverman consistently represented to Mr. Nizomov a partnership and this is "our game" and "we" can make so much money, but when Mr. Nizomov explained his frustration with the partnership and merely sought the ability to renegotiate or communicate more efficiently, Mr. Silverman locked him out and went elsewhere – all with Mr. Nizomov's work. Mr. Nizomov will not agree to a mere walk away and has sufficient evidence and case law to demonstrate entitlement to a reasonable compensation as well as grounds for copyright infringement. Mr. Nizomov is attending this conference with an open-mind and is open to discussion, but the most recent offer a walk-away and assigning all of his rights – will not work.

We remain available to answer any questions or provide any additional information this Court may need. We will also provide exhibits and supporting evidence for this Court's review if requested.

Respectfully Submitted,

**THE LOMNITZER LAW FIRM, P.A.**
*Attorneys for Defendant Javlon Nizomov*

By: <u>*/s/ Kelly Ann desRosiers*</u>
Kelly Ann desRosiers, Esq.
7999 N. Federal Highway, Suite 202
Boca Raton, FL 33487
Kelly@Lomnitzerlaw.com
(561) 953-9300