UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STUDIO GIRAFFE LLC and THOMAS SILVERMAN,<br><br>               Plaintiffs,<br><br>        v.<br><br>JAVLON NIZOMOV,<br><br>               Defendant. | 25-CV-5322 (RA)<br><br>OPINION AND ORDER |

RONNIE ABRAMS, United States District Judge:

This contract and intellectual property dispute arises out of the development of a video game project on the Roblox platform. Plaintiffs Studio Giraffe LLC ("Studio Giraffe"), a New York limited liability company with its principal place of business in New York, and Thomas Silverman, a New York domiciliary, allege that Silverman engaged Defendant Javlon Nizomov, a Florida domiciliary, as a contractor to develop the Speed Draw! video game. Plaintiffs dispute Nizomov's claimed ownership of Speed Draw! and its intellectual property, and now bring a series of claims seeking a declaratory judgment, damages, and injunctive relief. Nizomov moves to dismiss, arguing, among other things, that Plaintiffs have not demonstrated that he is subject to personal jurisdiction in New York. The Court agrees. For the reasons that follow, Plaintiffs' Complaint is dismissed, albeit without prejudice and with leave to amend.

## BACKGROUND[1]

In 2020, Plaintiff Thomas Silverman engaged Defendant Javlon Nizomov to "perform contract programming services for the initial development" of a video game hosted on the Roblox

---

[1] The following facts are taken from the Complaint, *see* Dkt. 1, and assumed to be true for the purposes of this Opinion and Order resolving Defendant's motion to dismiss. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

platform. Dkt. 1 ("Compl.") ¶¶ 14–15.  Nizomov worked on the project through early 2023, when he "was fired . . . after repeatedly failing to meet development deadlines, exhibiting unprofessional conduct, undermining team collaboration, acting in a verbally abusive manner, and making threats to Plaintiff Silverman."  *Id.* ¶ 18.  The game was launched at some point during this period. Nizomov was paid for his services through a revenue-sharing arrangement pursuant to which he earned up to 45% of the income generated from the Roblox platform.  *Id.* ¶ 17.  Following the dissolution of the parties' relationship, Silverman claims to have completely redeveloped the Speed Draw! project "using a new programming team"; today, "none of the source code authored by [Nizomov] remains in the deployed version of Speed Draw!."  *Id.* ¶¶ 19–20.

In the Complaint, Plaintiff Studio Giraffe asserts it is the "creator and owner of the game Speed Draw!."  *Id.* ¶ 14.[2]  Plaintiffs further assert that, "[d]espite having no ongoing role in the project and contributing nothing to the current game," Nizomov "has attempted to assert ownership rights in Speed Draw!."  *Id.* ¶ 21.  Notwithstanding the fact that Nizomov was, allegedly, merely a contractor hired by Silverman, rather than a member of a partnership with Silverman or a member of Studio Giraffe, he filed two federal trademark applications, without Silverman's permission, identifying himself as a co-owner of the Speed Draw! mark.  *Id.* ¶ 21.  In June 2025, Nizomov notified Plaintiffs that they were allegedly in breach of their agreement, and that their continued operation of the Speed Draw! game constituted willful copyright infringement.  *Id.* ¶ 22.  Nizomov also threatened to file "DMCA takedown notices" with Roblox to "force Speed Draw! offline."  *Id.* ¶ 25.

---

[2] Plaintiffs allege that Studio Giraffe is "a limited liability company organized and existing under the laws of the State of New York," with a principal place of business in New York.  Compl. ¶ 7.  Plaintiffs do not allege who the members of Studio Giraffe are, or how it came to hold ownership of Speed Draw!, which they otherwise allege was created by Silverman.

Plaintiffs now bring a series of claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., the Lanham Act, 15 U.S.C. §§ 1051 et seq., the Copyright Act, 17 U.S.C. §§ 101 et seq., and New York common law. *Id.* ¶ 1. They seek declaratory judgments that Nizomov and Silverman never formed a partnership, that Nizomov has no ownership interests in Studio Giraffe, Speed Draw!, or any related intellectual property, and that Plaintiffs have not infringed on any intellectual property held by Nizomov. *Id.* ¶¶ 26–35. They further bring a false designation of origin claim under the Lanham Act, and unfair competition and breach of contract claims under New York state law. *Id.* ¶¶ 48–61.

Plaintiffs seek an order from the Court cancelling any copyright registration procured by Nizomov regarding Speed Draw!, an order "compelling" Nizomov "to withdraw the pending trademark applications," and a "permanent injunction barring" Nizomov "from using the Speed Draw! name or any confusingly similar mark in commerce." *Id.* ¶ 47. They also seek an "award of actual damages, restitution, and disgorgement of ill-gotten gains resulting from" Nizomov's "breaches of contract and wrongful conduct," as well as fees and costs. *Id.* ¶ 61; *id.* at 12.

Nizomov moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. 12 ("Def. Mot."). Plaintiffs opposed, Dkt. 14 ("Pl. Opp'n"), to which Nizomov replied. Dkt. 15 ("Def. Repl.").

### LEGAL STANDARD

"[A] district court must generally . . . establish that it has federal constitutional jurisdiction" before considering other grounds for dismissal. *See All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006).[3] "[T]his principle applie[s] equally to

---

[3] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

personal jurisdiction," as personal jurisdiction is "an essential element" of a district court's jurisdiction "without which the court is powerless to proceed to an adjudication." *Mones v. Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 989 (2d Cir. 2006) (summary order); *see also Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.*, 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) ("Jurisdiction is a threshold matter, and must precede a determination on the merits."). As such, the Court will first address Nizomov's argument that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

On a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Penguin Grp. (USA) Inc. ("Penguin I") v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). Where the parties have not engaged in discovery, as here, a plaintiff seeking to defeat a motion to dismiss based on the lack of personal jurisdiction need only make a *prima facie* showing that jurisdiction exists. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013). "On a 12(b)(2) motion, the Court must construe the pleadings and affidavits in the light most favorable to plaintiff, resolving all doubts in its favor, and must accept the allegations in the Complaint as true to the extent they are uncontroverted by defendants' affidavits, which the district court may also consider." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020). The Court need not, however, "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). Thus, "[t]he plaintiff in opposing a 12(b)(2) motion cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be factually supported." *Sullivan v. Jersey Strong Licensing LLC*, 2019 WL 3066492, at *2 (S.D.N.Y. July 12, 2019).

4

Personal jurisdiction in a federal-question case is analyzed under a two-step inquiry. First, the Court must determine whether the exercise of personal jurisdiction is proper under the laws of the forum state—here, New York's long-arm statute. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010); *see PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) ("In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules."). If so, the Court must then determine "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014); *see also Chew v. Dietrich*, 143 F.3d 24, 28–29 (2d Cir. 1998). If a plaintiff alleges specific personal jurisdiction, "[a] plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

## DISCUSSION

Nizomov argues that Plaintiffs have not met their burden to plead specific personal jurisdiction under N.Y. C.P.L.R. § 302(a), New York's long-arm statute. Specific jurisdiction exists under Section 302(a) over any non-domiciliary who, in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
2. commits a tortious act within the state . . . ; or
3. commits a tortious act without the state causing injury to person or property within the state, . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a). Plaintiffs argue that personal jurisdiction exists over Nizomov under the first three subsections of Section 302(a), though they need only demonstrate that any one

5

subsection confers personal jurisdiction. The Court addresses each in turn, and concludes that Plaintiffs have not met their burden to plead specific personal jurisdiction over Nizomov.

### I.        C.P.L.R. § 302(a)(1)

Plaintiffs first argue that Nizomov has "engaged in purposeful, volitional business transactions with New York Plaintiffs that are directly connected to the claims at issue," such that personal jurisdiction is established under Section 302(a)(1). Pl. Opp'n at 5. The Court disagrees, and holds that Plaintiffs have not alleged sufficient facts to establish that Nizomov "transacted business within" New York pursuant to Section 302(a)(1).

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006); *see Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276–77 (2d Cir. 2024), *cert. denied sub nom. Zembrka v. Am. Girl, LLC*, 145 S. Ct. 130 (2025).

As to the first requirement, the "overriding criterion necessary to establish a transaction of business within the meaning of CPLR 302(a)(1) is that a non-domiciliary must commit an act by which it purposefully avails itself of the privilege of conducting activities within New York." *Am. Girl, LLC*, 118 F.4th at 277 (quoting *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014)). Therefore, a defendant need not be physically present in the state of New York in order to "transact business there within the meaning of the first clause of section 302(a)(1)." *Chloé*, 616 F.3d at 169. The Second Circuit has identified "four non-exclusive factors" to guide courts in determining whether a defendant transacts business in New York under Section 302(a)(1):

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding

the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires parties to that contract to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 10 (2d Cir. 2018) (summary order) (quoting *Sunward Elecs.*, 362 F.3d at 22); *accord WSP USA Bldgs., Inc. v. AECOM Ltd.*, 2025 WL 2606886, at *2 (S.D.N.Y. Sept. 9, 2025).  As the New York Court of Appeals has stated, "it is not the quantity but the quality of the contacts that matters" in the analysis.  *Paterno*, 24 N.Y.3d at 378.  Ultimately, though, "the determination is based on the totality of the circumstances."  *In re China Constr. Bank Corp.*, 803 F. Supp. 3d 260, 276 (S.D.N.Y. 2025).

As to the second requirement, "a claim arises from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted," such that "at least one element of the cause of action arises from the New York contacts."  *Yehuda v. Zuchaer*, 2023 WL 8888584, at *2 (2d Cir. Dec. 26, 2023) (summary order); *accord D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pinero*, 29 N.Y.3d 292, 299 (2017).  Furthermore, specific personal jurisdiction is analyzed claim by claim, and a plaintiff asserting specific personal jurisdiction "must establish the court's jurisdiction with respect to each claim asserted."  *Sunward Elecs.*, 362 F.3d at 24; *see, e.g.*, *D'Anzieri v. Harrison Glob. LLC*, 2025 WL 1755095, at *5 (S.D.N.Y. June 25, 2025) ("[E]ach claim must be separately analyzed to ascertain whether Plaintiff has established personal jurisdiction as to that claim.").  Although "Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York," it could provide a basis for personal jurisdiction over Nizomov as to all of Plaintiffs' claims, to the extent they can show an "articulable nexus" or "substantial

7

relationship" between the New York commercial activity and the cause of action. *Beacon Enters. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983) (applying Section 302(a)(1) to a declaratory judgment action); *see Sunward Elecs.*, 362 F.3d at 24 ("Although Section 302(a)(1) is typically invoked in breach of contract cases, it applies as well to actions in tort when supported by a sufficient showing of facts.").

Upon an examination of the *Sunward Electronics* factors, the Court finds that Plaintiffs have alleged only that Nizomov had an "on-going contractual relationship" with a New York domiciliary. *Rosenblatt*, 750 F. App'x at 10. They have alleged that Silverman "engaged" Nizomov "to perform contract programming services for the initial development of Speed Draw!," but have not alleged what the terms of that contract were, beyond the inclusion of a "commission-based . . . arrangement" for Nizomov's fees. Compl. ¶¶ 15, 17, 57. And Plaintiffs provide no detail about where the contract was negotiated, whether it included a choice-of-law provision, or what Nizomov was obligated to do pursuant to the contract.

Nizomov argues that he should not be subject to the jurisdiction of New York courts because he has never conducted business in New York or directed activities toward persons in New York. Def. Mot. at 5–6. He submitted an affidavit alongside the instant motion in which he stated that he has "no connections to the State of New York," has "no physical presence in the State of New York," has "never performed work within the State of New York," and otherwise is "based and reside[s] solely within the State of Florida." Def. Mot., Ex. 1 ("Nizomov Aff.") ¶¶ 2–3, 9, 19.

It is true that physical presence in New York is not a necessary prerequisite for a New York court to exercise jurisdiction over a defendant, so long as the defendant "on his or her own initiative projects himself or herself into this state to engage in a sustained and substantial transaction of

business." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 382 (2007); *see Berkshire Cap. Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008) (summary order). As alleged, however, Nizomov's only New York contacts related to his transactions with Plaintiffs appear to amount to "correspondence sent into New York, by a non-domiciliary defendant who is outside New York," which, without more, is generally "insufficient to establish personal jurisdiction." *WSP USA Bldgs.*, 2025 WL 2606886, at *4; *see, e.g.*, *Three Five Compounds, Inc. v. Scram Techs., Inc.*, 2011 WL 5838697, at *4 (S.D.N.Y. Nov. 21, 2011) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself."). "For example, jurisdiction was proper where a California resident retained via telephone and mail a New York lawyer whose work was performed within the state, where a California resident participated in a New York art auction through an open telephone line, and where an institutional investor negotiated and executed a series of investments in New York via electronic messaging." *Berkshire Cap. Grp.*, *LLC*, 307 F. App'x at 481 (collecting cases); *see, e.g.*, *Koutsoudakis & Iakovou L. Grp. PLLC v. Osman*, 2023 WL 5232622, at *5 (S.D.N.Y. Aug. 14, 2023).

The core question, then, is whether Plaintiffs have adequately alleged that Nizomov entered into "an ongoing relationship" with Plaintiffs which "tethers [him] to the plaintiff's ongoing commercial activity in New York such that the defendant in effect participates in the plaintiff's transaction of business. In that circumstance, the defendant's interstate communication is the transaction, or [at] least part and parcel of the relationship whereby the defendant participates in the plaintiff's transactional activity." *Three Five Compounds*, 2011 WL 5838697, at *10.

Other courts have found contracts for software-development services, entered into by an out-of-state defendant, to constitute a "transaction of business" sufficient to confer personal

jurisdiction under Section 302(a)(1).  The decision in *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, 2009 WL 1059647, at *4 (S.D.N.Y. Apr. 17, 2009), is instructive.  There, the court held that it could exercise personal jurisdiction over a non-domiciliary defendant, which contracted with the plaintiff to develop software for it.  *Id.*  The ordinary interactions typical of such a contract for services—such as adjustments to a program based on the plaintiff's requests, the transmission of code and files into New York, and regular updates to that code—revealed a "direct, participatory relationship with a New York corporation as a result of a business relationship into which [defendant] voluntarily entered."  *Id.*

The Complaint, though, provides almost no detail as to the relationship between Plaintiffs and Nizomov during the execution of the contract between them, beyond bare statements that Nizomov provided "contract programming services" and "coding services." Compl. ¶¶ 15, 57. Plaintiffs do not even provide a copy of the contract alongside the Complaint, identify its key terms, or indicate whether this contract was written or oral.  It may well be that Nizomov engaged in the type of "direct, participatory relationship" with Plaintiffs, as part of his provision of coding services, which the *Centrifugal Force* court found to be sufficient to exercise personal jurisdiction pursuant to Section 302(a)(1).  Plaintiffs, however, have simply not alleged the required facts about the parties' relationship for the Court to reach the same conclusion here.[4]

---

[4] Plaintiffs further argue that they have alleged facts sufficient to establish personal jurisdiction over Nizomov because he "accepted reimbursements for expenses through the New York-based enterprise."  Pl. Opp'n at 5.  Plaintiffs appear to rely on *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) for the proposition that payments from a New York domiciliary to a non-domiciliary may establish personal jurisdiction under Section 302(a)(1), but that case stands for no such proposition.  In *Licci*, the Second Circuit held that a non-domiciliary's intentional use of a "New York correspondent bank account, standing alone, may be considered a 'transaction of business' under the long-arm statute if the defendant's use of the correspondent account was purposeful."  *Id.*

*Licci* thus stands primarily for the proposition that a non-domiciliary's interactions with New York must be *purposeful* to establish personal jurisdiction.  Later cases have held that passively receiving payments for services performed elsewhere is not a purposeful interaction with New York.  *See WSP USA Bldgs.*, 2025 WL 2606886, at *4; *cf. Paterno*, 24 N.Y.3d at 378 (characterizing a non-domiciliary medical center's interactions with a New York plaintiff, who traveled there for services, as "responsive in nature" and therefore insufficient to confer personal jurisdiction).  Indeed, courts in this District have repeatedly held that payments from a New York entity to an out-of-state defendant "cannot

For these reasons, the Court holds that Plaintiffs have failed to allege specific personal jurisdiction, pursuant to Section 302(a)(1), because they have not shown that Nizomov has "transacted business within the state." *Sole Resort, S.A.*, 450 F.3d at 103. It therefore need not reach the question of whether each claim asserted arose from that business activity. *Id.*

### II.    C.P.L.R. § 302(a)(2) and (a)(3)

Plaintiffs also argue that Nizomov's conduct establishes personal jurisdiction under Section 302(a)(2), which extends personal jurisdiction over non-domiciliaries who "commit[] a tortious act within the state," and Section 302(a)(3), which extends personal jurisdiction over non-domiciliaries who "commit[] a tortious act without the state causing injury to person or property within the state," so long as additional statutory conditions are met. Plaintiffs base this argument on alleged "threats and fraudulent filings" made by Nizomov against Silverman, such as "fraudulent trademark and intellectual property filings" and threatened "DMCA takedown notices." Pl. Opp'n at 3–4. Although the parties have not briefed the issue, the Court assumes, for the purposes of this motion, that Plaintiffs are relying on Sections 302(a)(2) and 302(a)(3) to establish personal jurisdiction over Nizomov for their tort claims, namely the state-law unfair competition claim and federal false designation of origin claim.[5] But for the reasons that follow, the Court holds that neither Section confers personal jurisdiction over Nizomov for the alleged torts.

With respect to Section 302(a)(2), Plaintiffs assert that this provision applies "where, as here, an out-of-state actor purposefully directs tortious conduct into New York, even if the act

---

establish personal jurisdiction because such jurisdiction must arise out of contacts that the defendant itself creates with the forum State." *WSP USA Bldgs.*, 2025 WL 2606886, at *4; *see also Yoomi Babytech, Inc. v. Anvyl, Inc.*, 2021 WL 4332258, at *8 (S.D.N.Y. Sept. 22, 2021) (similar).

[5] Plaintiffs bring a false designation of origin claim under Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a). This claim "sounds in tort." *Sunward Elecs.*, 362 F.3d at 24; *see, e.g., PPX Enters. v. Audiofidelity, Inc.*, 746 F.2d 120, 124 (2d Cir. 1984) (noting that this claim constitutes a "statutory tort"). They also bring a claim for the state-law tort of unfair competition.

originates elsewhere." Pl. Opp'n at 7.[6] But "[t]o assert personal jurisdiction under § 302(a)(2)[,] Plaintiff must allege that each element of the torts on which such jurisdiction is based occurred in New York." *Helio Logistics, Inc. v. Mehta*, 2023 WL 21887, at *9 (S.D.N.Y. Jan. 3, 2023); *see, e.g.*, *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 763 F. Supp. 3d 618, 634 (S.D.N.Y. 2025) (same); *Paige v. Digit. Bus. Networks All., Inc.*, 2025 WL 753952, at *9 (S.D.N.Y. Mar. 10, 2025) ("[A] defendant's act or omission must have occurred within New York."). Put another way, "[c]ourts typically require that the defendant have been physically present in New York while committing the tortious act to confer jurisdiction under Section 302(a)(2)." *Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*, 2018 WL 1605985, at *13 (S.D.N.Y. Mar. 29, 2018). Plaintiffs, in their briefing, do not identify which cause or causes of action alleged confer jurisdiction under Section 302(a)(2), nor do they assert that Nizomov was physically present in New York while committing any element of any tort. Pl. Opp'n at 7. Accordingly, Section 302(a)(2) does not confer personal jurisdiction over Nizomov.

Section 302(a)(3) confers personal jurisdiction over non-domiciliary defendants who commit tortious acts outside of the state so long as the non-domiciliary "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3). To establish jurisdiction under Section 302(a)(3)(ii), a plaintiff must allege that "(1) the defendant committed a tortious act outside

---

[6] Plaintiffs cite a series of cases for this proposition, none of which are apposite. In *Elsevier, Inc. v. Grossman*, the court noted that the physical presence of a defendant, or a defendant's agent, "in New York is a prerequisite to jurisdiction under § 302(a)(2)," and imputed the in-state tortious acts of the defendants' agent to the out-of-state defendants. 77 F. Supp. 3d 331, 345 (S.D.N.Y. 2015). And in *Eades v. Kennedy, P.C. Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015), and *Chloé*, 616 F.3d at 169, the Second Circuit found that personal jurisdiction could be exercised under Section 302(a)(1) and therefore did not reach the question of whether it may also be exercised under Section 302(a)(2) or (a)(3).

New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha ("Penguin II")*, 16 N.Y.3d 295, 302 (2011).

As a preliminary matter, Plaintiffs do not appear to argue that C.P.L.R. § 302(a)(3)(i) applies to confer jurisdiction here, as they do not allege that Nizomov regularly "does or solicits business in New York," or "derives substantial revenue" from services performed in the state. N.Y. C.P.L.R. § 302(a)(3)(i); *see* Pl. Opp'n at 7–8.

Nor have Plaintiffs met their burden to show that Section 302(a)(3)(ii) applies. The primary problem is that Plaintiffs have not adequately alleged that any tortious act committed by Nizomov "caused an injury to a person or property in New York." *Penguin II*, 16 N.Y.3d at 302. "[C]ourts determining whether there is injury in New York sufficient to warrant Section 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury." *Paige*, 2025 WL 753952, at *9. In general, the fact that an injured party resides or is domiciled in New York "is not a sufficient predicate for jurisdiction under section 302(a)(3)." *Troma Ent., Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 218 (2d Cir. 2013). Nor is the fact that a plaintiff suffered economic damages in New York sufficient, standing alone, to establish a direct injury in New York. *Id.* Instead, "the critical question is . . . where the first effect of the tort was located that ultimately produced the final economic injury." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999). "Courts examining cases involving misrepresentations have, in fact, often found that the situs of injury is New York when

13

the original reliance or other first event causing the injury occurs in New York, even if the defendant has never sent any misrepresentations into the state." *Id.*

Plaintiffs bring false designation of origin and unfair competition tort claims against Nizomov. Compl. ¶¶ 48–55. For commercial torts, "Plaintiff[s] must [generally] plead lost sales or lost consumers in New York," or that New York customers were otherwise "confused or deceived" by a defendant's business practices for a Court to exercise personal jurisdiction pursuant to Section 302(a)(3)(ii). *Helio Logistics, Inc.*, 2023 WL 21887, at *11; *see Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467, 471 (S.D.N.Y. 2008).[7] This requirement extends to the tort of unfair competition. *See, e.g.*, *Bank Brussels Lambert*, 171 F.3d at 793 (noting that the situs of the injury for the tort of unfair competition is the place where a plaintiff "lost business"). It is also a requirement for copyright and trademark infringement actions, including the tort of false designation of origin. *See, e.g.*, *Dow Jones & Co. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 326 (S.D.N.Y. 2025) (collecting cases); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 568 (S.D.N.Y. 2000) (copyright); *Energy Brands Inc.*, 571 F. Supp. 2d at 467 (trademark). Here, Plaintiffs have not pled that any act by Nizomov has resulted in any lost sale or customer *in New York*. Rather, Plaintiffs plead general harm to "reputation, business interests, and relationships," "reputational harm, and disruption to business operations," and interference

---

[7] The New York Court of Appeals has instructed that, in "online copyright infringement cases," and in particular, "the uploading of a copyrighted printed work onto the internet," the location of the harm "carries less weight in the jurisdictional inquiry" because, in part, "an injury allegedly inflicted by digital piracy is felt throughout the United States, which necessarily includes New York." *Penguin II*, 16 N.Y.3d at 302–06. Accordingly, the Court of Appeals held that, in these cases, the location of the copyright holder is the situs of the injury. *Id.* at 305. Courts interpreting *Penguin II*, though, have largely limited its holding to digital piracy cases. In intellectual property cases writ more broadly, a plaintiff must still articulate "a non-speculative and direct injury to person or property in New York that goes beyond the simple economic losses that [a] New York-based business[] may suffer." *Troma*, 729 F.3d at 220; *see Dow Jones & Co. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 326–29 (S.D.N.Y. 2025) (glossing *Penguin II*, *Troma*, and later cases).

with "business relationships and [Roblox] platform access" without any sort of New York nexus. Compl. ¶¶ 53, 55, 60.  This is insufficient to meet their burden here.

Lastly, Plaintiffs have not adequately alleged that Nizomov "derives substantial revenue" from either New York or from international or interstate commerce.  "There is no bright-line rule on what constitutes substantial revenue, and courts have considered a defendant's revenue on both relative and absolute scales.  In other words, courts have looked to both the amount of a defendant's revenue from a particular source . . . and the percentage of a defendant's total revenue that comes from that source."  *Davey v. PK Benelux B.V.*, 2022 WL 1289341, at *3 (S.D.N.Y. Apr. 29, 2022). Plaintiffs have alleged only that Nizomov received a "share of revenue that reached as high as 45% of Roblox-generated income."  Compl. ¶ 17.  Plaintiffs do not allege, how much money Nizomov was actually paid pursuant to his contract with Plaintiffs—or whether Nizomov receives other revenue in interstate commerce—and so it is difficult for the Court to conclude that any such revenue is "substantial."  *Cf. Hamilton v. Accu-Tek*, 32 F. Supp. 2d 47, 68–69 (E.D.N.Y. 1998) (collecting cases suggesting that "absolute interstate revenue less than $500,000 is not considered substantial" and that "interstate revenue as a percentage of total revenue" is substantial when "greater than 5%").

For these reasons, Plaintiffs have not established specific personal jurisdiction for their tort claims under Section 302(a)(2) or (a)(3).

### III.    Leave to Amend

Plaintiffs request leave to amend, which Nizomov does not appear to oppose.  Pl. Opp'n at 13; *see generally* Def. Repl.  Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to amend a complaint "when justice so requires." The Supreme Court has further instructed that it would be an abuse of discretion for a district court to deny leave to amend

without some justification. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Where the possibility exists" that defects in a complaint "can be cured, leave to amend at least once should normally be granted unless doing so would prejudice the defendant."  *Laborers Loc. 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 605 (S.D.N.Y. 1998); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015) (noting that plaintiffs should ordinarily be given leave to replead with "the benefit of a ruling" on a motion to dismiss).  Counsel for Defendant has identified no prejudice that would accrue from amendment.

Accordingly, the Court grants Plaintiffs leave to amend their claims against Nizomov, so long as they have a good-faith basis to do so.

## CONCLUSION

Because Plaintiffs have not established specific personal jurisdiction over Nizomov under New York's long-arm statute, the Court need not reach his arguments that Plaintiffs have failed to establish constitutionally sufficient minimum contacts, that the Complaint fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a), or that Plaintiffs have failed to adequately plead their claims.  Plaintiffs' claims against Nizomov are, therefore, dismissed, albeit without prejudice and with leave to amend.  The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 12.

SO ORDERED.

Dated:    May 20, 2026
          New York, New York

                                        Ronnie Abrams
                                        United States District Judge

16